UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

TRANSAMERICA LIFE INSURANCE
COMPANY,

      Plaintiff,

Vs.                                              CASE NO.:

LAWRENCE E. WHITE; PARTNERSHIP
MANAGEMENT SERVICES GROUP,
LLC a/k/a PMSG, LLC

      Defendant.
_____/

## COMPLAINT

Transamerica Life Insurance Company sues Lawrence E. White and Partnership Management Services Group, LLC a/k/a PMSG, LLC, and states:

### PARTIES, JURISDICTION AND VENUE

1. This is an action for damages in excess of $75,000.

2. Plaintiff Transamerica Life Insurance Company ("Transamerica") is incorporated in Iowa with its principal place of business in Cedar Rapids, Iowa. Plaintiff Transamerica is a citizen of the State of Iowa.

3. Defendant Lawrence E. White ("White") resides in and does business in Orlando, Florida. Defendant White is a citizen of the State of Florida.

4. Defendant Partnership Management Services Group, LLC is a limited liability company organized under the laws of the State of Delaware.

1

5. Defendant White is a member of Partnership Management Services Group, LLC. If Defendant White is not the sole member of Partnership Management Services Group, LLC, the only other member is his wife, Ann White or an entity controlled by them.

6. Defendant White is a manager of Partnership Management Services Group, LLC. If Defendant White is not the sole manager of Partnership Management Services Group, LLC, the only other manager is his wife, Ann White or an entity controlled by them.

7. Defendant White, individually or with his wife owns and controls Partnership Management Services Group, LLC.

8. Defendant Partnership Management Services Group, LLC operates in Florida under the fictitious name "PMSG, LLC," and shall be referred to hereafter in this complaint as "PMSG."

9. Diversity jurisdiction exists under 28 U.S.C. § 1332 because there is complete diversity of citizenship among Transamerica and the Defendants and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

10. Venue is proper under 28 U.S.C. § 1391(b), as Defendant White resides in this judicial district, and a substantial portion of the causes of action alleged arose in this district.

## FACTUAL ALLEGATIONS

### Formation and Funding of the LWT96 Trust

11. The LWT96 Trust is a Land Trust created under the Florida Land Trust Act under Florida Statute § 689.071. A copy of the Trust Agreement is attached hereto as **Exhibit A**.

12. The purpose of the LWT96 Trust was to manage investments in annuities and life insurance and make other investments. The Managing Beneficiary was another trust known as the JHT96 Trust.

13. On or around April 28, 2002, Transamerica issued Single Premium Immediate Annuity No. 7405701 ("Annuity No. 7405701") to the LWT96 Trust, based on the life of annuitant Jacob W. Hoechst ("Hoechst" or the "annuitant"). Hoechst served as the Trustee of the JHT96 Trust.

14. Annuity No. 7405701 was a life only annuity, with monthly payments of $83,487.74 to be made only for as long as Hoechst lived, and with no additional benefits due.

15. On or around May 22, 2002, Transamerica issued Single Premium Immediate Annuity No. 7406418 ("Annuity No. 7406418") to the LWT96 Trust, based on the life of annuitant Hoechst.

16. Annuity No. 7406418 was a life only annuity, with monthly payments of $56,832.02 to be made only for as long as Hoechst lived, and with no additional benefits due.

17. On or around June 26, 2002, Transamerica issued Single Premium Immediate Annuity No. 7407504 ("Annuity No. 7407504") to the LWT96 Trust, based on the life of annuitant Hoechst.

18. Annuity No. 7407504 was a life only annuity, with monthly payments of $16,070.26 to be made only for as long as Hoechst lived, and with no additional benefits due.

**Defendant White's Efforts To Substitute the Trustee to an Entity Controlled by Him**

19. From its formation until on or about December 1, 2009, Defendant White was the trustee of the LWT96 Trust.

20. On or about December 1, 2009, Defendant White purported to appoint an entity that he owns and controls, namely PMSG, as the successor trustee of the LWT96 Trust. Indeed, Defendant White executed a Substitution of Trustee of Trust (the "Substitution of Trustee") on

behalf of both himself, as the current trustee, and on behalf of the purported successor trustee, PMSG. A copy of the Substitution of Trustee is attached hereto as **Exhibit B**.

21. The Land Trust Agreement does not permit the current trustee to appoint a successor. Rather, a trustee is permitted to resign "by sending notice of its intention to do so by registered mail to the BENEFICIARIES at its address last known to the TRUSTEE. Such resignation shall become effective ten (10) days after mailing such notice. In the event of such resignation, a successor or successors *may be appointed by the MANAGING BENEFICIARY, or failing that, by a majority in interest of the BENEFICIARIES….*" *See* Exhibit A at ¶ 15. While Hoechst, as Trustee of the Managing Beneficiary, the JHT96 Trust purportedly approved this substitution after-the-fact, it was not in accordance with the Land Trust Agreement.

22. Even were the Substitution of Trustee effective, Defendant White continued to oversee, manage, and otherwise function with respect to the LWT96 Trust in the same manner as he had previously.

23. Importantly, neither Defendant White nor anyone else informed Transamerica of the purported substitution of the original trustee.

24. At all times while the Annuities (defined below) were in effect, Defendant White, by his acts and those of his agents or representatives, held himself out to Transamerica as the trustee of the LWT96 Trust in correspondence and oral conversations; at a minimum he allowed Transamerica to believe that and act as if he were the trustee.

25. At all times while the Annuities were in effect, Transamerica executed Defendant White's ongoing and intermittent instructions in connection with the Annuities. In doing so, Transamerica relied to its detriment on Defendant White's implied and explicit representations

that he was the trustee of LWT96 Trust, and upon Defendant White's failure to correct any misimpressions he may now allege.

### Defendant White, PMSG and Lawrence E. White, Trustee are Alter Egos

26. After he signed the Substitution of Trustee on behalf of both the prior and substituting trustee, Defendant White continued to hold himself out as the trustee of the LWT96 Trust. For example, on or about January 22, 2020, Defendant White wrote to Transamerica on pre-printed letterhead of "Lawrence E. White A/T U/A LWT96 DTD 5/1/99." Defendant signed such letter as "Lawrence E. White, Trustee." A copy of this letter is attached hereto as **Exhibit C**.

27. Defendant White dominated and controlled PMSG such that PMSG's independent existence was non-existent; with respect at least to the LWT96 Trust, Defendant White, Lawrence E. White, Trustee, and PMSG are alter egos of one other.

28. Upon information and belief, LWT96 Trust, Defendant White, Lawrence E. White, Trustee, and PMSG all do business from the same location at 625 Waltham Avenue, Orlando, Florida and share the same resources such as, without limitation, employees, electric and water utilities, internet and telephone services, and brick and mortar facilities.

29. Defendant White has used PMSG for the improper purpose of knowingly obtaining or endeavoring to obtain or use the property of Transamerica with the intent to temporarily or permanently deprive Transamerica of a right or a benefit from that property.

### Transamerica Makes Overpayments Under the Annuities

30. Transamerica made monthly payments on Annuity No. 7405701, Annuity No. 7407504, and Annuity No. 7407504 (together, the "Annuities") consistent with the terms of those contracts.

31. On January 10, 2020, Defendant White notified Transamerica that the annuitant had passed away on October 4, 2019, and that the Trustee had received overpayments on the Annuities after the annuitant's death.

32. Once it was notified of Hoechst's death, Transamerica stopped making monthly payments on the Annuities, which were to end immediately upon the death of the annuitant.

33. Between the date of the annuitant's death and the date Transamerica learned of such death, Transamerica made three payments under Annuity No. 7405701 of $83,487.74 each, in the total amount of $250,463.22.

34. Between the date of the annuitant's death and the date Transamerica learned of such death, Transamerica made three payments under Annuity No. 7406418 of $56.832.02 each, in the total amount of $170,496.06.

35. Between the date of the annuitant's death and the date Transamerica learned of such death, Transamerica made four payments under Annuity No. 7407504 of $16,070.26 each, in the total amount of $64,281.04.

36. In total, Transamerica made payments under the three Annuities after the annuitant's death in the amount of $485,240.32.

### **Defendants Refuse to Return the Overpayments**

37. The LWT96 Trust was not entitled to the payments Transamerica made under the Annuities after the death of the annuitant.

38. Upon learning of the annuitant's death, Transamerica requested return of the improperly retained payments on at least five separate occasions, through Defendant White and/or his agent.

39. Notwithstanding Transamerica's demands, Defendant White and/or Defendant PMSG have failed and refused to return the overpaid amounts to Transamerica.

**Transamerica Obtains Default Judgment Against Defendant White, as Trustee**

40. On or about December 14, 2020, Transamerica filed a Complaint in the United States District Court, Middle District of Florida, Orlando Division alleging claims of Breach of Contract and Unjust Enrichment against Lawrence E. White as Trustee of the LWT96 Trust.

41. After service of process was effected, Defendant White failed to respond or otherwise appear in the action. Transamerica sought and ultimately obtained a default judgment against Lawrence White, as Trustee of the LWT96 Trust in the amount of $516,906.05, post judgment interest and costs of $402. A copy of the Amended Judgment in a Civil Case is attached hereto as **Exhibit D**.

42. On October 14, 2022, counsel for Transamerica took the deposition of Defendant White in aid of execution of the Amended Judgment. During that deposition, Defendant White admitted that he received the payments under the three Annuities after the annuitant's death in the amount of $485,240.32 and at that time he knew or should have known that the LWT96 Trust was no longer entitled to such payments.

43. Defendant White further admitted that rather than return the improperly retained funds to Transamerica, he used these funds to pay down a loan purportedly made by Lillian Adventure Group to the LWT96 Trust.

44. Defendant White further admitted that between February 2020 and June 2020, the LWT96 Trust received nearly $20,000,000 in life insurance proceeds as a result of Hoechst's death. Rather than returning to Transamerica the payments made under the three Annuities after

the annuitant's death from these funds, Defendant White paid these monies to a pool of investors known as Shared Capital Investors, of which Defendant White is one.

## Count I - Conversion

45. Transamerica re-alleges the allegations of Paragraphs 1 through 44 as if each were fully stated here.

46. Defendant White's and or PMSG's conduct in refusing to return the overpaid funds, notwithstanding Transamerica's numerous demands, are positive, overt act or acts of dominion or authority over the overpaid funds that is inconsistent with and adverse to the rights of Transamerica, the true owner of such funds.

47. Defendant White and/or Defendant PMSG is personally at fault for the conversion of Transamerica's funds as alleged in this complaint.

48. Transamerica has sustained damages as a result of the defendants' conversion of the overpaid funds.

49. Pursuant to Florida Statute 736.1013(2), Defendant White and/or Defendant PMSG is personally liable to Transamerica for such conversion.

50. Defendant White is liable for the tortious conduct of PMSG because they are alter egos.

## Count II – Civil Theft

51. Transamerica re-alleges the allegations of Paragraphs 1 through 44 as if each were fully stated here.

52. Transamerica has made written demand upon Defendants for return of the funds, and for three times the amount of such funds.

53. Defendant White and or PMSG have knowingly obtained or used, or endeavored to obtain or to use, the property of Transamerica with felonious intent to, either temporarily or permanently, deprive Transamerica of such funds, or to appropriate the funds to his/its own use although he/it is not entitled to it in violation of Florida Statute 812.014.

54. Defendant White and/or Defendant PMSG is personally at fault for the conversion of Transamerica's funds as alleged in this Complaint.

55. Transamerica has sustained damages as a result of the Defendants' theft of the overpaid funds.

56. Pursuant to Florida Statute 772.11(1), Defendant White and/or Defendant PMSG is liable to Transamerica for threefold its actual damages.

57. Pursuant to Florida Statute 736.1013(2), Defendant White and/or Defendant PMSG is personally liable to Transamerica for such theft.

58. Defendant White is liable for the tortious conduct of PMSG because they are alter egos.

## Count III – Unjust Enrichment

59. Transamerica re-alleges the allegations of Paragraphs 1 through 44 as if each were fully stated here.

60. Transamerica conferred a benefit upon Defendant White and/or Defendant PMSG and/or LWT96.

61. Defendant White and/or Defendant PMSG each knew about the benefit that Transamerica conferred upon them.

62. Defendant White and/or Defendant PMSG each voluntarily accepted and retained the benefit that Transamerica conferred upon them.

63. The circumstances are such that it would be inequitable for Defendant White and/or Defendant PMSG to retain the benefit conferred upon the LWT96 Trust without paying Transamerica the value of that benefit.

64. Pursuant to Florida Statute 736.1013(2), Defendant White and/or Defendant PMSG is personally liable to Transamerica for such unjust enrichment.

65. Defendant White is liable for the tortious conduct of PMSG because they are alter egos.

WHEREFORE, Transamerica Life Insurance Company requests the Court to enter final judgment in its favor and against each defendant, jointly and severally for compensatory, disgorgement, and consequential damages, treble damages for civil theft, costs and attorney's fees pursuant to Florida Statute 772.11(1), and for such other relief as may be just and proper.

Date: March 13, 2023.

/s/ Joshua D. Lerner
Joshua D. Lerner
Florida Bar No. 455067
E-mail: jlerner@rumberger.com
JESSICA KERBEL
Florida Bar No.: 124152
E-mail: jkerbel@rumberger.com (primary)
docketingmiami@rumberger.com and
jkerbelsecy@rumberger.com (secondary)
RUMBERGER, KIRK & CALDWELL, P.A.
Brickell City Tower, Suite 3000
80 S.W. 8th Street
Miami, Florida  33130
Telephone:  (305) 358-5577
Telecopier:  (305) 371-7580

*Attorneys for Plaintiff*

17545354.v1