**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**TRANSAMERICA LIFE
INSURANCE COMPANY,**
                    **Plaintiff,**

**v.**                                                    **Case No. 6:23-cv-452-ACC-DCI**

**LAWRENCE E. WHITE and
PARTNERSHIP MANAGEMENT
SERVICES GROUP, LLC,**
                    **Defendants.**

_____

## ORDER

This cause comes before the Court on Defendants Lawrence E. White and

Partnership Management Services Group ("PMSG"), LLC's Motion to Bifurcate

Punitive Damages Claims (Doc. 92) and White's Appeal/Objection[1] of Magistrate

Judge's Order (Doc. 97) denying his Motions[2] for Protective Order (Doc. 104).

Plaintiff Transamerica Life Insurance Company[3] ("Transamerica") has filed a

Response to the Motion to Bifurcate (Doc. 110). For the reasons set forth below,

Defendants' Motion to Bifurcate will be denied and White's Objection/Appeal will

be overruled.

_____

[1] Defendants' appeal is the operative "Second Amended Objection" filed after the original Objection was stricken for failure to comply with the Local Rules. (*See* Doc. 102).

[2] (Docs. 90, 95).

[3] Effective October 1, 2005, Transamerica Life Insurance and Annuity Company merged into Transamerica Life Insurance Company. (*See* Doc. 105). Defendants' argument that Transamerica lacks standing is meritless.

# I. BACKGROUND FACTS[4]

As set forth in detail in the Court's previous Order denying Defendants' Motion to Dismiss Transamerica's claims (*see* Doc. 84), Defendant White is at the center of two lawsuits by Transamerica to recoup more than $500,000 in overpayments on three life-annuities. Initially Transamerica sued White in his capacity as the trustee of a land trust that had received nearly half a million dollars-worth of annuity overpayments. The instant case is the second one filed by Transamerica to recover the overpayments, but names as Defendants White individually and an entity that he controls, PMSG.

### *The First Case Against White as Trustee*, Case No. 6: 20-cv-2258

On December 14, 2020, Transamerica filed suit against "Lawrence E. White as Trustee of the Lawrence E. White Trust"[5] alleging breach of contract and unjust enrichment claims arising out of the annuity overpayments to LTW96 Land Trust that he allegedly controlled. On May 4, 2021, Magistrate Judge Kelly recommended granting the default judgment against White as Trustee, describing the facts as follows:

> In 2002, Plaintiff issued three Single Premium Immediate Annuities to the Lawrence E. White Trust, based on the life of annuitant Jacob W. Hoechst. *Id.* at ¶¶ 6-11. The annuities were life only annuities. *Id.*

---

[4] For purposes of deciding the motion to dismiss, the Court accepted the allegations contained in Transamerica's Second Amended Complaint as true and construed them in a light most favorable to the plaintiff. *Holland v. Carnival Corp.*, 50 F.4th 1088, 1093 (11th Cir. 2022); *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010).

[5] Transamerica mistakenly misidentified the LWT96 Trust in the original lawsuit. (*See* Doc. 50 at 2 n.1).

Plaintiff made monthly payments on the annuities consistent with the contracts. *Id.* at ¶ 12. Attached to the Complaint are the Policy Data, Application, and Life Only Disclosures for each annuity. Doc. Nos. 1-1, 1-2, 1-3. "On January 10, 2020, [Defendant] notified [Plaintiff] that the annuitant had passed away [on] October 4, 2019, and that [Defendant] had received overpayments on the Annuities after the annuitant's death." Doc. No. 1 at ¶ 13. Plaintiff ended the monthly payments and requested repayment of the payments it made between October 4, 2019, and January 10, 2020. *Id.* at ¶ 15. Plaintiff made the following payments to Defendant during that time period:

> a. Three payments made after the annuitant's death on Annuity No. 7405701 of $83,487.74 each, in the total amount of $250,463.22.

> b. Three payments made after the annuitant's death on Annuity No. 7406418 of $56,832.02 each, in the total amount of $170,496.06.

> c. Four payments made after the annuitant's death on Annuity No. 7407504 of $16,070.26 each, in the total amount of $64,281.04.

*Id.* Plaintiff seeks $485,240.32 in overpayments from Defendant. Doc. No. 1 at ¶ 16. Plaintiff alleges that Defendant has not responded to its multiple written requests for repayment. *Id.* at ¶ 17. Plaintiff asserts claims for breach of contract and unjust enrichment for each of the three annuities. *Id.* at 4-7.

On December 28, 2020, Defendant was served with the complaint and summons. Doc. No. 8. Defendant has not appeared in this action, and on January 25, 2021, a clerk's default was entered against him. Doc. No. 10. On February 18, 2021, Plaintiff moved for entry of a default judgment by the clerk pursuant to Federal Rule of Civil Procedure 55(b)(1) (the "Motion"). Doc. No. 11. The Motion is supported by affidavits and requests that judgment be entered in the sum certain of $485,240.32, plus filing fee costs in the amount of $402, and prejudgment and post judgment interest. *Id.* at 5.

*Transamerica Life Ins. Co. v Lawrence E. White as Trustee of the Lawrence E. White*

*Trust*, Case No. 6:20-cv-2258, Doc. 12 (M.D. Fla. May 4, 2021), *report & recom. adopted* by Doc. 13 (M.D. Fla. May 26, 2021), *amended* by Doc. 16 (M.D. Fla. June 29, 2021).

On May 27, 2021, the undersigned entered final default judgment for Transamerica against Lawrence E. White as Trustee of the Lawrence E. White Trust for the ten individual overpayments under three separate annuities totaling $485,240.32. (Case No. 6:20-cv-2258, Doc. 15). The judgment was amended on June 29, 2021 to include the prejudgment interest of $31,665.73 and costs of $402, bringing the total amount to $516,906.05, in order to avoid individual calculations of interest on the separate amounts tied to ten different annuity overpayments, which was significantly complex. (*Id.*, Doc. 16).

### *The Current Case Against White and PMSG*, Case 6:23-cv-452

On March 13, 2023 Transamerica filed its second case asserting claims against White individually and against his related entity PMSG, alleging that the annuity overpayments made to the LWT96 Trust were converted by and unjustly enriched White and PMSG when the funds were not returned and were used to pay other debts or a payout that benefited White.

The LWT96 Trust is a Land Trust created in 1991 under the Florida Land Trust Act, Florida Statute § 689.071. (Doc. 47 ¶ 11; Doc. 47-1 (Trust Agreement as restated on Aug. 11, 2008)). The purpose of the LWT96 Trust was to manage investments in annuities and life insurance and make other investments. (*Id.* ¶ 12).

The Managing Beneficiary was another trust, known as the JHT96 Trust. (*Id.*).

On April 28, 2002, Transamerica issued three life-only annuities to the LWT96 Trust, all three based on the life of annuitant Jacob W. Hoechst ("Hoechst" or the "Annuitant"). (*Id.* ¶ 13). Hoechst served as the Trustee of the JHT96 Trust. (*Id.* ¶ 13; Doc. 47-2). The three annuities—issued between April and June 2002—had the following monthly payments to be made to the LWT96 Trust "for as long as Hoechst lived, and with no additional benefits due" (referred to collectively as "the Annuities"). (Doc. 47 ¶¶ 13-18). The following monthly payments were to be made for as long as Hoechst lived:

| Annuity No. | Monthly Payments | Issue Date |
|---|---|---|
| 7405701 | $83,487.74 | April 28, 2002 |
| 7406418 | $56,832.02 | May 22, 2002 |
| 7407504 | $16,070.26 | June 26, 2002 |
| | $156,390.02 | |

(Doc. 47-2 to 47-4; Doc. 48 at 23-42).[6] Transamerica made monthly payments to LWT96 on these Annuities consistent with the terms of the contracts. (Doc. 47 ¶ 32). According to the Trust Agreement for the LWT96 Trust, Defendant White was the trustee of the LWT96 Trust. (Doc. 47 ¶ 19).

On December 1, 2009, White purported to appoint PMSG, an entity that he owns and effectively controls,[7] as the successor trustee of the LWT96 Trust. (*Id.* ¶¶

---

[6] The Court may consider such attachments at this stage if the material is (1) central to plaintiff's claim and (2) undisputed. *See, e.g., Correa v. BAC Home Loans Servicing LP*, No. 6:11-cv-1197-Orl-22DAB, 2012 WL 1176701, at *3 (M.D. Fla. Apr. 9, 2012), and cases cited therein.

[7] Transamerica alleges that White is a manager and member of PMSG, LLC, and, if not the sole member and manager, the only others are his wife, Ann White, or an entity controlled by

4-7, 20). White executed the "Substitution of Trustee" on behalf of himself individually, as the current trustee, as well as on behalf of PMSG, the successor trustee. (*Id.* ¶ 20; Doc. 47-5). There were significant deficiencies in the way White attempted to substitute PMSG for himself as trustee, and these deficiencies made the "Substitution of Trustee" ineffective. (Doc. 47 ¶¶ 21-22). According to the terms of the LWT96 Land Trust Agreement, only after a trustee resigns, may the managing beneficiary, who in this case in 2009 was effectively Hoechst, appoint the successor trustee. (*Id.*; Doc. 47-1 at 9 ¶ 15).[8] Transamerica alleges that White was not permitted to appoint his own successor (PMSG); and when Hoechst "approved" White's substitution after-the-fact,[9] it was not in accordance with the requirements of the LWT96 Land Trust Agreement; and consequently, White remained the Trustee after December 1, 2009. (*Id.* ¶¶ 21-22). Even if the "Substitution of Trustee" had been effective, White continued to oversee, manage, and otherwise function with respect to the LWT96 Trust in the same manner as he had previously as Trustee.[10]

them. (Doc. 47 ¶¶ 4-6). White individually or with his wife owns and controls PMSG. (Id. ¶ 7).

   [8] Hoechst was Trustee of the Managing Beneficiary of the JHT96 Trust. (Doc. 47 ¶ 21). The pertinent section provides:

   15. RESIGNATION OF TRUSTEE
   The TRUSTEE may resign at any time by sending a notice of its intention to do so . . . to the beneficiaries. . . In the event of such resignation, a successor or successors may be appointed by the MANAGING BENEFICIARY, or failing, that, by a majority in interest of the BENEFICIARIES . . . .

(Doc. 47-1 ¶ 15).

   [9] White argues that the document was "executed by Hoechst" and "compl[ied] in all material respects" with the Trust Agreement. (Doc. 48 at 4). The Court must credit the plaintiff's version of the facts in evaluating the motion to dismiss. *See Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010).

   [10] To the extent White argues that Transamerica has a judgment against a "non-existent

(*Id.* ¶ 23).

On January 10, 2020, White notified Transamerica that Hoechst had passed away on October 4, 2019, and the Trust had received overpayments on the Annuities. (*Id.* ¶ 33). Transamerica stopped making monthly payments on the Annuities immediately but, by that time, Transamerica had already made overpayments of $485,240.32 to the LWT96 Trust. (*Id.* ¶¶ 34-38). Transamerica requested that White and/or his agents return the retained overpayments on at least five separate occasions (*Id.* ¶ 40), however, they refused to return the overpayments to Transamerica. (*Id.* ¶ 41).

Transamerica was never informed of the December 2009 substitution of PMSG for the original trustee, and White continued to hold himself out to Transamerica as the trustee of the LWT96 Trust in correspondence and oral conversations, allowing Transamerica to believe he was the trustee. (*Id.* ¶¶ 24-25). On January 22, 2020, White wrote to Transamerica on pre-printed letterhead of "Lawrence E. White A/T U/A LWT96 DTD 5/1/99," signing the letter as "Lawrence E. White, Trustee." (*Id.* ¶ 28; Doc. 47-6). Transamerica executed White's instructions in connection with the Annuities and relied to its detriment on White's "implied and explicit representations that he was the trustee of LWT96 Trust." (*Id.*

---

party" (Doc. 48 at 20) because he was not trustee after December 1, 2009, Transamerica sufficiently alleges in the alternative that White remained trustee because the substitution was ineffective, he was trustee-in-fact through 2020, and that he was the alter ego of the putative trustee PMSG.

¶ 26). White dominated and controlled PMSG such that PMSG's independent existence was non-existent, thus, White, Lawrence E. White, Trustee, and PMSG are alter egos of one other, do business from the same location at 625 Waltham Avenue in Orlando, and White used PMSG to retain the annuity overpayments. (*Id.* ¶¶ 29-31, 52).

On December 14, 2020, Transamerica filed its first lawsuit (described above) against White as the Trustee of the LWT96 Trust, alleging claims for breach of contract and unjust enrichment. *See* Case No. 20-cv-2258. White ultimately defaulted in the first litigation, and Transamerica was ultimately granted (an amended) default judgment of $516,906.05 on June 30, 2021. *Id.*

On October 14, 2022, Transamerica took the deposition of White in aid of execution on the amended judgment. (Doc. 1 ¶ 42). White admitted under oath at the deposition that the LWT96 Trust was not entitled to the overpayments from Transamerica; rather than return the overpayments, he used them to pay down a loan from Lillian Adventure Group to the LWT96 Trust. (Doc. 47 ¶ 45). White also admitted that, between February 2020 and June 2020, the LWT96 Trust received nearly $20,000,000. (*Id.* ¶ 46). White delivered all of the Trusts' funds to a pool of investors known as Shared Capital Investors, of which White is one. (*Id.* ¶ 47).

### *Procedural History for* **Case No. 23cv452**

On March 13, 2023, Transamerica filed a second lawsuit in this Court against White individually and against PMSG (Doc. 1); it filed an amended complaint on

May 24, 2023. (Doc. 28). Following Defendants' filing of Motions to Dismiss the Amended Complaint (Docs. 29, 30), Transamerica sought leave to file a further amended pleading, which the Court granted. (Docs. 40, 46). Transamerica's Second Amended Complaint (Doc. 47) asserts claims against White individually[11] and PMSG for breach of contract, conversion, and unjust enrichment, and to enforce the amended default judgment previously obtained against White individually and PMSG as his alter ego. (Doc. 47).

On September 18, 2023, Defendants filed their Motions to Dismiss the Second Amended Complaint, and Transamerica timely responded (Docs. 48, 49, 50). On December 27, 2023, the Court denied Defendants' Motions to Dismiss for the reasons discussed *infra.* (Doc. 84). The Court further ordered PMSG to file an amended disclosure statement regarding the correct status of its membership since the information provided to the Florida Secretary of State's office was inaccurate. (*Id.*).

On March 11, 2024, Defendants filed their Motion to Bifurcate Punitive Damages Claims (Doc. 92). Transamerica timely responded to the punitive damages issue on April 2, 2024. (Doc. 110).

## II. ANALYSIS

### *Appeal of Magistrate Judge's Order Regarding Discovery*

---

[11] Unless otherwise indicated, references to "White" are to Lawrence E. White individually, and not to his role as trustee or to his wife, Ann White.

On March 5, 2024, White filed a Motion for Protective Order from Transamerica's Notice taking his deposition *duces tecum*, arguing that Transamerica should be "barred from premature discovery of pre-judgment confidential financial information"; Transamerica timely responded. (Docs. 90, 91). A week later, on March 12, 2024, White filed his Motion for Protective Order from "Punitive Damages Discovery and Excessive and Duplicative Discovery." (Doc. 95). Both Motions seeking protective orders from providing financial discovery were referred to Magistrate Judge Irick as discovery matters. (*See* M.D. Fla. L. R. 1.02(a); 28 U.S.C. § 636). The following day, on March 13, 2024, Judge Irick denied the Motions, finding that the financial net worth discovery Transamerica sought was relevant to its claim for punitive damages. (Doc. 97 at 2-3).

A party may object to a magistrate judge's order on a non-dispositive pre-trial matter, such as a discovery ruling, *within fourteen days* after service of the order. Fed. R. Civ. P. 72(a) (emphasis added). When a party objects to a non-dispositive order of a Magistrate Judge, "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *S.E.C. v. Kramer*, 778 F. Supp. 2d 1320, 1326-27 (M.D. Fla. Apr. 1, 2011) (internal citations and quotation marks omitted). "An order is contrary to law when it fails to

apply or misapplies relevant statutes, case law or rules of procedure." *Id.* at 1327 (internal citations and quotation marks omitted).[12]

Here, fourteen days after the Order was entered, March 27, 2024, White timely filed an "Objection of Magistrate Judge's Order" (Doc. 97); however, it was filed in violation of Local Rule 3.01(a) because it exceeded the twenty-five-page limitation. (Doc. 104). Therefore, the Court struck the "Objection." (Doc. 102). Fifteen days after Judge Irick's ruling, on March 28, 2024, White filed two untimely amended versions of his original Objection, one of which was again in excess of the Local Rules at twenty-seven pages. (Docs. 103, 104). White's "Second Amended Objection" was also untimely, having been filed without leave of Court and more than fourteen days after the Magistrate Judge's Order in violation of Federal Rule of Civil Procedure 72(a). White's "Second Amended Objection" could be overruled on that basis as untimely. *See Smith v. Sch. Bd. of Orange Cnty.*, 487 F.3d 1361, 1365 (11th Cir. 2007) (finding appeal issue waived because it was filed after the relevant time period to object to magistrate judge's order on the issue).

Even assuming *arguendo* that the Second Amended Objection to Judge Irick's Order denying preclusion of financial discovery had not been untimely, it would nonetheless be overruled because the Court declines to bifurcate or preclude

---

[12] To the extent that White contends that certain arguments made in the Motion to Bifurcate Punitive Damages were not "fully considered" as part of the Motions for Protective Order, the Local Rules do not authorize incorporation by reference. *See* L.R. 3.01(f).

financial worth discovery related to punitive damages[13] for the reasons set forth below.

### *Motion to Bifurcate Punitive Damages Claims for Purposes of Discovery*

Defendants argue that Transamerica's punitive damages claims against them should be bifurcated "pursuant to Rule 42 and the Court's inherent authority" because Transamerica "fails to set forth any allegations that would support punitive damages discovery" and "has yet to . . . present any evidence that would entitle [it] to punitive damages or *discovery*." (Doc. 92). Under Federal Rule of Civil Procedure 42, the Court "may order a separate trial of one or more separate issues [or] claims" for "convenience [or] to avoid prejudice." Fed. R. Civ. P. 42(b). "It is the interest of efficient judicial administration that is to be controlling under the rule, rather than the wishes of the parties." 9A Charles A. Wright & Arthur A. Miller, FEDERAL PRACTICE & PROCEDURE § 2388 (3d ed. 2008). "The piecemeal trial of separate issues in a single lawsuit or the repetitive trial of the same issue in severed claims is not to be the usual course." *Id*. Rule 42(b) should be resorted to "only as the result of the exercise of informed discretion when the district judge believes that separation will achieve the purposes of the separate trial rule." *Id*. In determining whether to order separate trials, the court should consider:

> whether the specific risks of prejudice and possible confusion are overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial

---

[13] White has tied his Objection directly to his Motion to Bifurcate Punitive Damages Claims. (*See* Doc. 104 at 2).

resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Allstate Ins. Co. v. Vizcay*, 826 F.3d 1326, 1333 (11th Cir. 2016) (citation omitted). The burden is on the party seeking separate trials to prove that separation is "necessary." Wright and Miller, § 2388.

Here, Defendants argue—raising what are essentially discovery-related issues rather than trial issues—that Transamerica "has aggressively proceeded with punitive damages *discovery* by subpoenaing 25 separate entities that Defendants may have some connection to or which merely share a business address with Defendants" and seek "*discovery* which has nothing to do with the merits of the claims and is solely focused upon seeking Defendants' confidential and private financial information." (*Id*. (emphasis added)).

Defendants do not cite a relevant Eleventh Circuit case but instead rely on a 1970 case from the Ninth Circuit, *Ellingson Timber Co. v. Great Northern Ry. Co.*, 424 F.2d 497, 499 (9th Cir. 1970), for the general principle that "[a] trial court has discretion to bifurcate issues to avoid unnecessary discovery 'pending resolution of potentially dispositive preliminary issues.'" (Doc. 92 at 15). The single Middle District case that Defendants cite, *Warfield v. Stewart*, 2009 WL 2392036, *2 (M.D. Fla. Aug. 2, 2009), does not address bifurcation at all and merely refers to a previous order in the case that Defendants do not cite or discuss. (Doc. 92 at 16). Both of the Southern District cases, which Defendants cite as granting "bifurcation of punitive

damages claims," do not support their argument because the cases were decided at the motion *in limine* stage shortly before *trial*—not in the discovery phase—and did not preempt the financial discovery from defendants. In *Blanco v. Capform, Inc.*, 2013 WL 118171, *4 (S.D. Fla. Jan. 9, 2013), the court specifically found that bifurcation would not "significantly delay proceedings." *Id.* None of the federal cases Defendants cite support bifurcation in the *discovery* phase.[14]

Instead, Defendants' argument to preclude discovery of financial information is based exclusively on Florida Statute § 768.72. They argue that § 768.72 is "substantive law" which must be applied in a diversity case such as this one based on the Eleventh Circuit's decision in *Porter v. Ogden, Newell & Welch*, 241 F.3d 1334 (11th Cir. 2001) which they (mis)characterize as holding: "The Eleventh Circuit has stated that district courts sitting in diversity must adhere to the discovery component of § 768.72." (Doc. 92 at 17 (citing *Porter*, at 1340). In truth, *Porter* specifically held the opposite—that the plaintiffs were entitled to financial worth discovery from defendants because a "reasonable basis existed for [their] punitive damages claim," and the Eleventh Circuit explicitly declined to decide whether federal discovery rules preempted § 768.72:

> [Section] 768.72 also has a discovery component which states that "[n]o discovery of financial worth shall proceed until after the pleading concerning punitive damages is permitted." Fla. Stat. § 768.72. Prior to allowing discovery of financial net worth information, Defendants

---

[14] To the extent Defendants seek to bifurcate the issue for trial, they are not precluded from filing a motion *in limine* by the appropriate deadline.

argue that § 768.72 requires a plaintiff who has made a claim for punitive damages to produce evidence or make a proffer of evidence that shows a reasonable basis for the punitive damages claim. This court, in [a prior case], *did not decide whether or not federal discovery rules preempt this rule*. Likewise, we need not answer this question here because *the record indicates that the Trustees made a proffer of evidence that reasonably supports their claim*.

*Porter*, 241 F.3d at 1340.  All that *Porter* requires then, is that a punitive damages claim be supported by "a proffer of evidence":

> The Florida courts do not require a fact intensive investigation into the merits. Instead, the *Florida courts entertain the punitive damage issue by way of a motion to dismiss or a motion to strike*, not a summary judgment motion. *See Will v. Systems Eng'g Consultants, Inc.*, 554 So.2d 591, 592 (Fla. App. 3 Dist.1989); *see also Solis v. Calvo*, 689 So.2d 366 (Fla. App. 3 Dist. 1997) ("Pursuant to Florida Statute section 768.72 (1995), a punitive damage claim can be supported by a proffer of evidence. A formal evidentiary hearing is not mandated by the statute."). Under Florida law, merely setting forth conclusory allegations in the complaint is insufficient to entitle a claimant to recover punitive damages. *See T.W.M. v. American Medical Sys., Inc.*, 886 F.Supp. 842, 845 (N.D. Fla. 1995); *Bankest Imports, Inc. v. ISCA Corp.*, 717 F.Supp. 1537, 1542–43 (S.D. Fla. 1989). Instead, a plaintiff must plead specific acts committed by a defendant. *See Bankest Imports*, 717 F.Supp. at 1542–43.

*Id.* at 1340-41 (emphasis added).[15]

In this case, Transamerica has established a reasonable basis for punitive damages based on its allegations in the Second Amended Complaint (Doc. 47) and the default judgment entered against White, as Trustee, in Case No. 6: 20-cv-2258.

---

[15] Although Defendants referred extensively to White's deposition testimony and numerous exhibits, the Court need not consider such evidence at this juncture. Porter, 241 F.3d at 1340. Those arguments are more suitable for summary judgment.

The Court found in a lengthy Order denying Defendants' Motions to Dismiss that Transamerica stated claims against White and PMSG, personally and/or as alter egos, for breach of the Annuity Contracts, conversion, and unjust enrichment as alleged in the Second Amended Complaint:

> Transamerica issued three life-only annuities, which paid a fixed amount each month. (Doc. 47 ¶¶ 13-18). The Annuitant died on October 4, 2019, but Transamerica did not learn of his death until January 10, 2020. (Id. ¶ 33). Transamerica made overpayments under the Aunnuities between the time of Hoechst's death and January 10, 2020. (*Id*. ¶¶ 35-37). Transamerica additionally alleges in the Second Amended Complaint in this case that White was the Trustee of the LWT96 Trust, and White's attempt to appoint PMSG as successor trustee of the Trust in December 2009 were unsuccessful thus, he remained Trustee, or was the trustee-in-fact because White held himself out to Transamerica as trustee of the Trust. (Doc.47 ¶¶ 19, 23-27). Alternatively, Transamerica alleges that, even if PMSG was effectively Trustee, White and PMSG are alter egos of each other. (*Id*. ¶ 29).
>
> Transamerica alleges against both Defendants that it demanded return of the overpayments at least five times; White and PMSG knew or should have known that the LWT96 Trust was not entitled to the overpayments; and, between February and June 2020, the Trust received nearly $20,000,000 and could have returned the overpayments; instead, White, or PMSG through White, used the overpayments to pay down a loan and to pay a pool of investors which included White and benefitted him. (*Id*. ¶¶ 40-47). . . .
>
> In this case, Transamerica alleges that White—whether acting individually, or as trustee-in-fact, or through PMSG as the alter ego he controlled—knew that the LWT96 Trust was not entitled to the overpayments yet, rather than returning them, White used the overpayments to pay other creditors of the Trust. These creditors, Transamerica alleges, included an investor group to which White personally belonged. Accordingly, accepting the allegations of the Second Amended Complaint as true, as the Court must on a Motion to Dismiss analysis, Transamerica states a viable claim against White and, in the alternative, against PMSG for personal liability. . . .

- 16 -

Transamerica argues that the "conversion" of the overpayments occurred at the time when White, or the entity he controlled, PMSG, refused to return the overpayments and used the overpayments for other obligations of the Trust even though Transamerica had demanded return of the overpayments. (Doc. 50 at 6-7 (citing All Cargo, 355 So. 2d at 179). Transamerica alleges that White, as PMSG's manager, knew the Trust had received the overpayments, and notwithstanding that knowledge, and White and PMSG refused to return the overpayment when demanded. (Doc. 50 at 7 (citing Doc. 47-6)). Transamerica contends that such allegations would make the trustee personally at fault and, therefore, individually liable pursuant to § 736.1013(2). . . .

"It constitutes conversion for a creditor to apply such funds of the debtor in a way which is expressly contrary to the debtor's specific instructions and thereafter to refuse return of the funds upon the debtor's demand." *Id.* (citing PROSSER ON TORTS 89-91 (4th ed. 1971)); *Senfeld v. Bank of Nova Scotia Tr. Co. (Cayman) Ltd.*, 450 So. 2d 1157 (Fla. 3d DCA 1984) (holding that plaintiff was entitled to judgment for conversion of the funds where it had repeatedly demanded return $10,000 overpayment, which was "sufficiently identifiable," but was not relinquished by intermediary bank). For this reason, the cases Defendants cite for the proposition that Transamerica's claims are "no more than a claim to repay a debt" are inapposite because Transamerica has alleged more than a simple contractual claim. Accordingly, Defendants' Motions to Dismiss Transamerica's conversion claim will be denied. . . . Transamerica has sufficiently alleged that, rather than return the overpayments, White (or PMSG as directed by White) used the overpayments to pay down a loan and ultimately deliver funds to a group of investors which included White. To the extent Defendants seek dismissal of Transamerica's unjust enrichment claim, the Motions to Dismiss will be denied. . . .

Defendants argue that the Second Amended Complaint must be dismissed because Transamerica fails to sufficiently allege that PMSG is the alter ego of White; that it is a "mere instrumentality" of White, or that he "dominated and controlled" PMSG to the extent that it did not have an independent existence. (Doc. 48 at 18; Doc. 49 at 18). . . .

Transamerica, as detailed at length above, has pleaded sufficient facts that White and PMSG were alter egos to survive the Motions to

Dismiss. Transamerica alleges White serves as sole member, manager, and owner of PMSG, with the only other possible member, manager, or owner being his wife or an entity that they control. (Doc. 47 ¶¶ 5-7). Transamerica has pleaded that White and PMSG do business from the same location at 625 Waltham Avenue, Orlando, Florida and share the same resources. Transamerica argues that, after White's non-compliant effort to substitute PMSG as trustee, he continued to hold himself out, individually, as trustee. Allegations against him include White's writing in January 2020 to Transamerica about the overpayments on letterhead and signatory authority which identified him as trustee of the LTW96 Trust (Doc. 47-6) and his representations that he was trustee. (Doc. 47 ¶¶ 40, 44-46).

Transamerica specifically alleges that: White "dominated and controlled PMSG such that PMSG's independent existence was non-existent"; "Defendant White, Lawrence E. White, Trustee, and PMSG are alter egos of one other" in relation to the LWT96 Trust; and White has used PMSG for the improper purpose of obtaining or using Transamerica's property with the intent to temporarily or permanently deprive Transamerica of a right or a benefit from that property. (*Id.* ¶ 29, 31). Particularly given the Court's familiarity with the allegations of the previous case in which an uncontested default judgment was entered against White as Trustee of the Trust, Transamerica's Second Amended Complaint sufficiently alleges facts to support its alter ego theory. Thus, to the extent Defendants seek dismissal of Transamerica's allegations regarding alter ego, the Motions to Dismiss will be denied.

(Doc. 84). Transamerica specifically sought punitive damages for White and PSMG's conversion of the Annuity overpayments. (*See* Doc. 47 at 14). Punitive damages are recoverable for conversion . *See Cerny v. Boulevard Del, Inc*., No. 6:18-cv-1808-Orl-22TBS, 2019 WL 5291208, at *8 (M.D. Fla. July 11, 2019) (citing *Foley v. Dick*, 436 So.2d 139, 141 (Fla. 2d DCA 1983) (where circumstances surrounding conversion are such as to show fraud, actual malice, deliberate violence,

oppression, such gross negligence as to indicate wanton disregard of rights of others or where wrong partakes of criminal character)).

Consistent with this Court's Order denying the Motions to Dismiss (Doc. 84), Magistrate Judge Irick correctly found that Defendants' motions to preclude financial worth discovery should be denied:

> White contends that a protective order is necessary to bar White "from premature discovery of pre-judgment confidential financial information intended to harass and burden White with overly broad discovery not relevant to any claim or defense[.]" Doc. 90 at 1. Specifically, White argues that the proposed deposition is irrelevant to Plaintiff's "unsupported punitive damages claim" and that White is entitled to a protective order barring premature financial discovery prior to the determination of Plaintiff's entitlement to punitive damages. *Id*. at 2.

> Under the Federal Rules of Civil Procedure, a party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ." Fed. R. Civ. P. 26(b)(1). In most cases, financial discovery is not appropriate until after judgment. *FTC v. Turner*, 609 F.2d 743, 745 (5th Cir. 1980).

> However, financial net worth discovery is relevant to a claim for punitive damages. *Lynch v. Rose Radiology Ctrs., Inc*., 2022 WL 1015815, at *2 (M.D. Fla. Apr. 5, 2022) (citing *Alexander v. Allen*, 2014 WL 3887490, at *2 (M.D. Fla. Aug. 7, 2014)). "The Eleventh Circuit has stated that 'in civil cases, we have not required a showing of compelling need before tax information may be obtained by a party in discovery, but instead have determined that such information need be only arguably relevant.'" *Soliday v. 7-Eleven, Inc*., 2010 WL 4537903, at *2 (M.D. Fla. Nov. 3, 2010) (quoting *Erenstein v. SEC*, 316 F. App'x 865, 869-70 (11th Cir. 2008)). To be sure, a defendant's financial condition becomes relevant when punitive damages are requested. *Soliday*, 2010 WL 4537903, at *2. Likewise, a defendant's wealth is a factor for consideration in determining the reasonableness

for an award of punitive damages. *Myers v. Central Florida Investments, Inc.*, 592 F.3d 1201, 1216 (11th Cir. 2010).

White seemingly applies a reasonable basis requirement to the production of financial worth discovery by citing Section 768.72, Florida Statutes. Doc. 90 at 2 ("Florida Statute § 768.72 requires establishing reasonable basis for punitives prior to seeking financial discovery."). However, courts in this district have repeatedly held that Section 768.72 is inconsistent with the Federal Rules of Civil Procedure and therefore inapplicable in federal diversity actions. *See Lynch*, 2022 WL 1015815, at *2; *Pantages v. Cardinal Health 200, Inc.*, 2009 WL 1011048, at *2 (M.D. Fla. Apr. 15, 2009) ("[U]nder an Erie analysis there is no doubt that the federal discovery rules trump § 768.72."); *Rosolen v. Home Performance All., Inc.*, 2020 WL 7419651, at *3 (M.D. Fla. Aug. 21, 2020) ("Indeed, § 768.72 is a pleading statute that has no effect on discovery practice in federal court.") (internal quotations omitted). Accordingly, the standards of Section 768.72 are not applicable here.

Here, Plaintiff's Second Amended Complaint requests punitive damages. Doc. 47 at 14. *Because Plaintiff requests punitive damages in the operative complaint governing discovery, Plaintiff is entitled to some financial worth discovery from White. For the foregoing reasons, White's argument that Plaintiff must establish certain threshold issues before entitlement to such financial worth discovery is without merit.*

Finally, on March 12, 2024, White filed another motion for protective order relating to Plaintiff's Fourth Request for Production and Second Set of Interrogatories. Doc. 95. White's arguments in this motion are identical to those made in the previous Motion. *See id.* Although the Court has not yet received a response from Plaintiffs, the Court finds that White's second motion for protective order (Doc. 95) is also due to be denied for the reasons set forth in this order. Accordingly, the Motions (Doc. 90; Doc. 95) are DENIED.

(Doc. 97 at 2-3 (emphasis added)).[16]

---

[16] The Court need not address Defendants' rehash of the same arguments that were unsuccessful in their Motions to Dismiss. (*See* Doc. 104 at 22-25).

Because this Court had already determined that a reasonable basis existed for Transamerica's conversion and unjust enrichment claims, Magistrate Judge Irick's denial of Defendants' Motion to limit discovery regarding financial worth was not "clearly erroneous" or "contrary to law." *See* Fed. R. Civ. P. 72(a). Therefore, Defendants' Objection seeking to limit "financial discovery" to "a separate phase of litigation which should not proceed until it is apparent that plaintiff is entitled to punitive damages" (Doc. 104 at 18) will be overruled. [17]

To the extent Defendants seek to preclude financial worth discovery, the Motion to "Bifurcate the Punitive Damages Claims" is denied. To the extent Defendants seek to bifurcate punitive damages at trial, they can raise the issue in a properly supported motion *in limine* filed after the close of discovery and by the applicable deadline set forth in the Case Management and Scheduling Order.

Based on the foregoing, it is ordered as follows:

1.      Defendant White's Amended Objection (Doc. 103) is **OVERRULED** as moot based on the filing of the Second Amended Objection (Doc. 104).

2.      Defendant White's Second Amended Objection (Doc. 104) is **OVERRULED** and Judge Irick's March 13, 2024 Order (Doc. 97) is **AFFIRMED**.

---

[17] Defendants unhelpfully cited a case from the Middle District of Florida which specifically noted that "the Eleventh Circuit has *not* held that the heightened pleading requirements of Section 768.28 apply in federal diversity cases," citing *Porter*. (*See* Doc. 92 at 18 (citing *Gallina v. Commerce and Industry Ins*., 2008 WL 3895918, *5 (M.D. Fla. Aug. 15, 2008)). This is the opposite of the principle that Defendants argue applies here.

3.      Defendants' Motion to Bifurcate the Punitive Damages Claim (Doc. 92) is **DENIED** to the extent they seek to preclude financial worth discovery and **DENIED without prejudice** as to whether the punitive damages claim should be tried separately.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on April 11, 2024.

ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record